OLIVER W. BROWNING, Plaintiff in Error, *v.* THE CITY OF
SPRINGFIELD, Defendant in Error.

ERROR TO SANGAMON.

An action for damages resulting from negligence will lie against a municipal corporation, if the duty to make repairs is fully declared, and adequate means are put within the power of the corporation to perform the duty.

BROWNING brought his action in damages against the City of Springfield, alleging that it was the duty of the city to keep a certain street in repair, which duty had been neglected, in consequence thereof he had fallen and broken his leg. To this action the city interposed a demurrer. The demurrer by consent was sustained by DAVIS, Judge, presiding, at November term, 1850, of the Sangamon Circuit Court.

LINCOLN and HERNDON, for Plaintiff in Error.

STUART and EDWARDS, and W. J. BLACK, for Defendant in Error.

SCATES, C. J. The case is one for negligence in not repairing the streets; and may be distinguishable from a case for carelessness, negligence or unskillfulness in the manner of doing work, or making repairs. Parties might be liable civilly for private damage for the latter, who were not so liable for the former. Corporations like individuals are liable for the negligent, unskillful acts of their servants and agents, in the performance of their work in such manner as to injure the property of others. *Sic utere tuo non alienas laedas,* is applicable to all, and should afford practical redress against a certain class of injuries to others, arising from the manner in which we enjoy and exercise our rights over our own property. It is broadly laid down and applied in *The Mayor, &c., New York* v. *Bailey,* 2 Denio R. 439, for the unskillful and insufficient manner of building the dam on Croton river, for the water-works of the city, though the city had a discretion whether the dam should be built. *McCombs* v. *The Town Council of Akron,* 15 Ohio R. 474, held a still broader rule and fixed the liability for an injury to a house from grading a street, where there was neither negligence or malice.

The case of *Russell et al.* v. *The Men dwelling in the County of Devon,* 2 Term R. 671, has settled that the *inhabitants* of a county are not liable to a civil action for injuries occasioned by want of repairs of a bridge; although the county was required

to make the repairs.   And it was put upon the footing that the common law afforded no remedy in such a case.

This has since been extended by decisions in this country to counties, overseers of highways, commissioners of highways, and towns, and the case of *Russell et al.* v. *The Men of Devon*, has been invariably referred to to show there was no civil remedy at the common law.   *Mower* v. *Leicester*, 9 Mass. R. 250; *Riddle* v. *The Proprietors of Locks and Canals on Merrimack River*, 7 Mass. R. 169; *Farnum* v. *The Town of Concord*, 2 N. Hamp. R. 392; *Hedges* v. *The County of Madison*, 1 Gil. R. 568; *Bartlett* v. *Crozier*, 17 John. R. 446; *Morey* v. *The Town of Newfane*, 8 Barb. S. C. R. 646.

These decisions are doubtless all correct, but the reason upon which they are founded, is not to be found in the case of *Russell et al.* v. *The Men of Devon.*   As a general rule at the common law the counties were charged with the duty of repairing highways and bridges, unless other parishes, boroughs, or corporate bodies were liable by prescription or statute.   *The People ex rel. Hoes et al.* v. *Canal Trustees*, 14 Ill. R. 402.   But this liability with us is one of imperfect obligation, because the duty is not absolute, nor the means of performing it unlimited.   The county, to a great extent, exercises a discretion in building and repairing bridges, and in opening and discontinuing highways. *Ibidem.*   Besides a want of perfect and full powers, in counties, supervisors and other public officers charged with these duties, adequate to raise the necessary means, and a discretion to judge of the time, place, manner and amount required, they are corporations or *quasi* corporations, and officers involuntarily charged with duties appertaining alone to the public; and exercise subordinate ministerial functions in the discharge of fixed and prescribed duties.   They are criminally liable for neglect, by information or indictment, to fine; and to this only to the extent of the means placed under their control.   *Bartlett* v. *Crozier*, 17 John. R. 438; *The People* v. *Adsit et al.*, 2 Hill R. 619; *People* v. *Commissioners of Highways of Hudson*, 7 Wend. 474; *Morey* v. *The Town of Newfane*, 8 Barb. S. C. R. 646; *Barker* v. *Loomis*, 6 Hill R. 464; *Lynn* v. *Adams*, 2 Carter R. 143. While this obligation is perfect with respect to the duty prescribed, and the liability criminally is reciprocal for its breach, yet in the sense and view of a private civil remedy by suit for damages for its neglect, its obligation is imperfect upon these · mere public agents or officers, whenever the power and means are wanting, and the duty is not clear, specific and complete.   I speak of non-feasance, for there might be liability for malfeasance, when none would arise civilly for neglect.   But this class of public agents, and this class of powers, and duties, are not

to be confounded with another, whether individual or corporate, possessing ample and full powers and means, and charged with a full, specific and complete duty. Such are liable for injuries arising from omissions of duty, and, like individuals, for a careless, negligent and unskillful performance.

This shows the true distinction between the two classes of cases : where the duty is clear, specific and complete, but where the means may not be adequate, and those cases where both are complete. In the former the obligation is imperfect,—that is, there is no civil liability ; in the latter there is a perfect obligation and a civil liability for neglect in all cases of special private damage.

A short review of cases of this latter class may clear the subject of apparent difficulty by confounding them. By immemorial usage the corporation of Lynn Regis were bound to repair a certain creek, for want of which Turner was compelled " to carry his corn round about," without alleging other special damages. Held, that the action would lie ; " it might be the very condition and terms of their creation and charter." *The Mayor of Lynn* v. *Turner*, Cowp. R. 86. In *The Mayor of Lyme Regis* v. *Henley*, 1 Bingh. N. C. 222, (27 Eng. C. L. R. 366) in the House of Lords, special damages were laid. The action was sustained upon the ground that the charter imposed the duty of repairing the buildings, banks, sea-shores, and all other mounds and ditches, the pier-quay or the cob, &c. Certain farm rents due from the corporation were remitted ; liberty to dig stone, and other means of performing the duties enjoined, were conferred upon the corporation.

Park, J., in delivering the opinion of the Judges, lays down certain predicates which test the question, and when they all exist the civil action will lie :

*First*, It must appear that the corporation is under a legal obligation to repair the place in question ;

*Second*, That such obligation is matter of so general and public concern that an indictment would lie against the corporation for non-repair ;

*Third*, That the place is out of repair ; and lastly, that the plaintiff has sustained some peculiar damages beyond the rest of the subjects.

The doubt arose upon the first and second requisites. The duty to repair arose as a condition of the charter with the privileges and means conferred, and which were accepted. Upon the same principle in *Hutson* v. *The City of New York*, 5 Sandf. R. 296, the city was held liable for damages occasioned by the non-repair of a street ; and in construing the 175th Section of the general act relating to the city of New York, a

phraseology merely permissive was held to be peremptory in imposing the duty of repair. *The Mayor, &c., New York,* v. *Furze,* 3 Hill R. 612.

This was applied to the negligence of persons employed by the officers of the corporation in repairing sewers, in *Lloyd* v. *The Mayor, &c., City of N. York,* 1 Selden R. 369. And again in Pennsylvania, in *Pittsburgh City* v. *Grier,* 22 Penn. State R. 63, for allowing pig iron to lie on the wharf, contrary to their own ordinances, by means of which a steamer was lost. The city of Madison was made liable for damage done a tanyard, &c., by the negligence or unskillfulness of agents of the city in the construction of a culvert and embankment across a certain run or brook in the public street. *Ross* v. *The City of Madison,* 1 Carter R. 281. *McCombs* v. *Town Council of Akron,* 15 Ohio R. 474, is another and strong instance of liability for work done in a negligent manner. In Massachusetts, Maine, Vermont and New Hampshire express provision is made by statute for a recovery of civil damages. *Farnum* v. *The Town of Concord,* 2 N. Hamp. R. 392; *Brady* v. *The City of Lowell,* 3 Cush. R. 124; *Mower* v. *Leicester,* 9 Mass. R. 250; *Cobb* v. *Standish,* 14 Maine R. 198; *Johnson* v. *Whitefield,* 18 Maine R. 286; *Rice* v. *Montpelier,* 19 Vermont R. 474; *Baxter* v. *Wenooski Turnpike Co.,* 22 Vermont R. 121. It is true that in this last case, and in *Mower* v. *Leicester,* above, the courts say that no action lay at common law, but both vouch, *Russell et al.* v. *The Men of Devon,* which does not support that position, but only decides that the action will not lie against the inhabitants of the county. The argument of the court in that case shows that the action did not lie, and would not against the county itself, had it been a corporation capable of being sued. But the reason for it does not appear to be so much the want of a statutory provision as the existence of facts showing the county possessed of powers and means, and expressly requiring the specific duty; as was shown against the corporation of Lyme Regis, and in the several cases against the city of New York, all of which were cases of mere neglect to repair; as was also the case of the mayor of Lynn Regis. The simple deduction which may be drawn from the cases, is, that where a specific duty to repair is fully and completely enjoined, and full and adequate powers and means are provided or put within the power of the person or corporation to provide, the obligation is perfect, and liability for neglect is reciprocal for the special damages occasioned by it. The same rule is adopted in Alabama and Florida. 24 Alab. R. 112; 3 Florida R. 19.

Apply these principles to the case before us. We judicially

notice the public charter of the city and its provisions, and in them we find the duty imposed as a matter of public law, as alleged in the declaration. Acts, 1839, p. 9, Art. 5, Secs. 9, 10. In the same article power is given to levy a tax of one-half per cent. per annum on all taxable property in the city, (Sec. 1;) to license and tax auctioneers and other dealers, (Sec. 17,) hacks, carriages, &c., (Sec. 18,) tippling houses, (Sec. 21;) to impose fines, &c., (Sec. 34,) with various other powers usually granted to cities, including that of condemning private property for public use, in opening, widening, or altering streets, lanes, avenues and alleys, (Art. 7, Sec. 1,) and a power to tax owners of lots for grading and paving sidewalks, and lighting streets, &c. (Sec. 6.)

All public property of the city is vested in the corporation, with power to cause all male inhabitants of twenty-one years to work three days on the streets. (Art. 8, Sec. 2.) And in addition, the inhabitants are exempted from work on roads outside the city limits, and from taxes for that purpose, and from all county tax on personalty. The city is required to support its paupers, and pay the court and jail expenses of those committing crime within the city.

Here is a specific, full and complete, duty imposed, with powers adequate to discharge it, and means that appear ample to its accomplishment in labor, taxes, fines, &c. An indictment would surely lie for neglect. The non-repair is fully averred, so also are the injury and damage.

Under the strictest rules laid down in this class of cases, this seems clearly to fall within them, and fix the liability of defendant for the injury occasioned by its neglect.

Nor do I perceive that this is in any degree in conflict with the principles and cases which are put upon the principles of the common law in its application to public corporations and public officers solely charged with the execution of part of the details of the law in relation to highways and bridges. Here valuable privileges are granted, with ample resources of labor, taxes and fines, with powers to enforce the labor and payments, and exemptions granted from other onerous burthens.

All these considered together exceed the apparent powers and means given to the corporation of Lyme Regis. And I can see no apparent reason for a greater limitation of its liability than was fixed in that case under like circumstances. The duty is also as clear, the power as ample, and the means as ample, apparently, as in the cases against the city of New York. Why the redress and remedies should not be as ample and extensive, both public and private, for the protection of citizens

and others against the negligence of this city as those other cities mentioned, I am unable to discover.

With such lights for our guide, and such authorities for our sanction, we not only feel authorized but required to afford the protection sought. And more especially as we think the decisions based upon sound sense in accordance with strict morality, and keeping pace with the progress of the improvements of the age.

Judgment reversed and cause remanded with leave to defendant to plead.

*Judgment reversed.*