## Charles Backer v. West Chicago Park Commissioners.

1. WEST CHICAGO PARK COMMISSIONERS.—*A Municipal Corporation —Liability.*—The West Chicago Park Commissioners is a municipal corporation, with limited powers granted to it by the legislature, and as such is not liable for damages resulting from the negligence of its officers in giving an employe a vicious and unsafe horse to use.

2. RESPONDEAT SUPERIOR—*Where the Doctrine Does Not Apply.*—If

the agents or servants of a municipal corporation are independent of the corporation, as to the tenure of their office and the manner of discharging their duties, the corporation is not impliedly liable for their acts of negligence, and the doctrine of *respondeat superior* does not apply.

3. SAME—*Foundation of the Doctrine.*—The doctrine of *respondeat superior* is founded upon the maxim *Qui facit per alium, facit per se.*

**Action for Personal Injuries.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed October 22, 1896.

WILLIAM E. MASON, attorney for appellant.

As to whether a municipal corporation is liable to be sued in tort, it is only necessary to cite a few authorities to show that the well settled law of this State sustains our contention of the liability of the defendant in this case. Lacon v. Page, 48 Ill. 499; Champaign v. Patterson, 50 Ill. 61; Bloomington v. Bay, 42 Ill. 503; Sterling v. Thomas, 60 Ill. 264; Clayburgh v. Chicago, 25 Ill. 535; Springfield v. Le Claire, 49 Ill. 476.

E. T. NOONAN and VICTOR ELTING, attorneys for appellee.

The West Chicago Park Commissioners was created a corporate authority by act of the legislature of the State of Illinois. Private Laws of Illinois, 1869 (Vol. 1), 342.

The West Chicago Park Commissioners is a municipal corporation for park purposes. West Chicago Park Commissioners v. City of Chicago, 152 Ill. 393.

Municipal officers and servants, in the performance of duties essentially public in their nature, are agents of the State at large, and the municipality is not liable for damages resulting from their negligent acts. Dillon on Municipal Corporations (4th Edit.), Secs. 974–977 incl. and 980, with notes and cases cited; Beach on Public Corporations, Chap. 20, Secs. 738–745 incl. and 1010, 1011, and cases cited; Tiedemann on Municipal Corporations, Sec. 324; Shearman and Redfield on Negligence (4th Edit.), Secs. 253, 255, and numerous cases cited; 2 Thomp. on Negligence, pp. 625 *et seq.*, 737, with cases cited.

The exemption from tort liability of counties, towns and school districts, repeatedly recognized in this State, is based upon the above principle. Town of Waltham v. Kemper, 55 Ill. 346; Russell, Adm'r, v. Town of Steuben, 57 Ill. 35; White, Adm'r, v. County of Bond, 58 Ill. 297; Hallenbeck, Adm'r, v. County of Winnebago, 95 Ill. 148; Cooney v. Town of Hartland, 95 Ill. 516; Tiedemann on Municipal Corporations, Sec. 325.

The duties imposed on the West Chicago Park Commissioners are essentially public in their nature and fall within the duties of a State to its people. Private Laws of Illinois, 1869 (Vol. 1), 342; Dillon on Municipal Corporations (4th Edit.), Sec. 598; Beach on Public Corporations, Sec. 582, with cases cited.

The members of the Board of West Chicago Park Commissioners are officers and agents of the State in the exercise of governmental functions. Private Laws of Illinois, 1869 (Vol. 1), 342; Wilcox v. The People, 90 Ill. 186; West Chicago Park Commissioners v. McMullen, 134 Ill. 170.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Appellant brought suit against the Board of West Park Commissioners, alleging that, being employed by the defendant to drive and handle horses, while in the discharge of his duties, the defendant gave to him a vicious and unsafe animal, well knowing the same to be unsafe for the use of him, the appellant, or any other person, and that the defendant neglected to warn appellant of the unsafe character of said horse, and that while he, the appellant, was in the discharge of his duties in obedience to the orders of the defendant, and while in the exercise of all due care and diligence, the said horse which he was then using became unruly and unmanageable, by means whereof he was greatly injured and bruised, and so remained for a long time, and thereby suffered great loss and damage, and was put to great loss and expense, wherefore he brings suit, setting his claim for damages at the sum of $25,000.

A demurrer to the declaration having been sustained, appellant, the plaintiff below, has appealed to this court.

The West Chicago Park Commissioners is a municipal corporation, having certain limited powers granted to it by the legislature. The members of the Board of West Chicago Park Commissioners are agents, by whom, in part, the people of the State carry on the government. Their functions are essentially political and concern the State at large, although they are to be discharged within the town of West Chicago. * * * We can not doubt that these Park Commissioners come within the term of officers. Wilcox v. The People, 90 Ill. 186; West Chicago Park Commissioners v. McMullen, 134 Ill. 170.

The parks and boulevards owned and controlled by the park board are held for the use of the public generally, as well as for the public in their immediate vicinity. West Chicago Park Commissioners v. The City of Chicago, 152 Ill. 393.

Ordinarily the principal is liable for the negligent acts of his servant in the course or line of his employment, in consequence of which a third person suffers injury, upon the principle of *respondeat superior*, but a distinction exists in the case of municipal corporations, as a municipal corporation is not liable for the tortious acts of police officers employed by it, or for the negligence of firemen in running over persons in the street, or for the negligence of health officers in its employ. Dillon on Municipal Corporations, 4th Ed., Secs. 975, 976, 977, 978.

The rule by which it is to be determined whether a municipal corporation is liable for the acts of persons in its service, is stated in Dillon on Municipal Corporations, Sec. 974, as follows:

"It may be observed in the next place, that when it is sought to render a municipal corporation liable for the acts of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation. If the corporation appoints or elects them, can control them in the discharge of their duties, can continue or remove them, can

hold them responsible for the manner in which they discharge their trusts, and if those duties relate to the exercise of corporate powers, and for the peculiar benefit of the corporation in its local or special interest, they may justly be regarded as its agents or servants, and the maxim of *respondeat superior* applies. But if, on the other hand, they are elected or appointed by the corporation in obedience to the statute, to perform a public service not peculiarly local or corporate, but because this mode of selection has been deemed expedient by the legislature in the distribution of the powers of government—if they are independent of the corporation as to the tenure of their office, and the manner of discharging their duties, they are not to be regarded as the servants or agents of the corporation, for whose acts or negligence it is impliedly liable, but as public or State officers, with such powers and duties as the statute confers upon them, and the doctrine of *respondeat superior* is not applicable."

If this rule were to be followed in this State, the question would arise whether this municipality, including within its territory upward of a million of people, and a great amount of property, is liable for the negligent acts of persons employed by the board of commissioners, said commissioners not being, either directly or indirectly, selected or appointed by the municipality over which said commissioners exercise jurisdiction, neither said municipality, the voters or inhabitants thereof, having control over the action of said commissioners, or power to remove them for cause or otherwise.

Another reason given for the exemption of municipal corporations, such as towns and counties, from liability for the tortious acts of their servants, is that such municipalities exist by force of the general law; are part of the subdivisions of government; merely aids and assistants to the State in exercising its functions; that they have not been created at their own instance or request, but that for purposes of its own the sovereign power called them into, and keeps them in existence as its servants, agents and depend-

encies; and that as the sovereign power itself can not be sued for the negligent acts of any of its servants, therefore its mere agencies, which exist for its purpose alone, ought not to be held liable; and that a distinction exists between municipalities created alone at the instance of the sovereign power by general law, and cities, incorporated towns and villages, existing by virtue of special laws, and most frequently after the question of accepting such special charter has been submitted to, and approved by, the inhabitants of such municipality.

In the case of West Chicago Park Commissioners, the act creating the municipality did not go into effect until it had been submitted to, and was ratified by, the voters of the new district thus created. In this State the rule has long been, as laid down in Town of Waltham v. Kemper, 55 Ill. 346, that a distinction exists between the liability of villages, towns and cities created for their own benefit, and towns established by law as civil divisions of a county, the latter not being liable to private action for damages occasioned by the negligence of their servants. As is said in that case, at the common law, while actions are maintainable against towns which are but civil divisions of the county, it has been held ever since the case of Russell et al. v. Men Dwelling in the County of Devon, 2d Term Reports, 671, that towns or counties, though corporations, but existing as such by virtue of the general political government of the State, are not liable at the common law to actions for neglect of duty, and can only be made liable by statute. Such was the rule announced in the case of Hedges v. The County of Madison, 1 Gilman, 567, and such has been the uniform holding in this State, with the exception of the case of Town of South Ottawa v. Foster, 20 Ill. 296, which case was overruled in Town of Waltham v. Kemper, *supra*. In the case last mentioned, the court said:

" The reason which exempts these public bodies from liability to private actions, based upon neglect to perform a public duty, does not apply to villages, boroughs and cities, which accept special charters from the State. The grant

of the corporate franchise in those cases is usually made only at the request of the citizens to be incorporated, and it is justly assumed that it confers a valuable privilege, which is held to be a consideration for the duties imposed by the charter. By those charters, larger powers of self-government are conferred than those confided to towns or counties; larger privileges in the acquisition and control of corporate property, and special authority is given them to make use of the public highways for the special and peculiar convenience of the citizens of the municipality, in various modes not permissible elsewhere. These grants raise an implied promise on the part of the corporation to perform their corporate duties, and it inures to the benefit of every individual interested in its performance."

The subject now under consideration was recently considered in the case of Elmore v. Drainage Commissioners, 135 Ill. 269. The corporation in that case sought to be held liable for the negligent act of its commissioners, was organized under the statute in force July 1, 1879, providing for the organization of drainage districts. Sec. 119 of said act provided that whenever a majority of the adult owners of land who shall be the owners of more than one-third of the lands in any area of territory lying in more than two townships, either in the same or different counties * * * should file a petition for the organization of a drainage district, etc., such petition should, notice having been given as provided in the act, be heard and passed upon by the County Court. While that act did not require that a majority of the inhabitants of the drainage district sought to be created should sign the petition, it did require that a majority of all of the owners of land to be affected by such petition, and out of whose lands only could funds for the carrying on of the contemplated work be obtained, should join in the petition. The district thus created was, therefore, one brought into existence, not by the sovereign power for the purposes of the general welfare only, but was one that came into being at the instance of those whose property was to be affected thereby.

The Drainage Commission District against which suit was brought, reported in 135 Ill., would seem, therefore, to have been a municipality of limited powers, created at the instance of those whose property was to be affected thereby, and such is the municipality controlled by the West Park Commissioners, and the rule applicable as to the liability of one for the negligent acts of its servants, to be applicable as to the question of the liability of the other.

In Elmore v. Drainage Commissioners, *supra*, the court said :

" In Commissioners v. Kelsey, 120 Ill. 482, and in other cases, it has been held that drainage districts are to be classed as municipal corporations. It is manifest, however, that they are not municipal corporations proper, nor do we regard them as analogous to such corporations. In the case of an incorporated city a perfect obligation is imposed by the law, and powers and means full, ample and adequate for the discharge of such duty are given. A drainage district, however, is organized merely for a special and limited purpose. Its powers are restricted to such as the legislature has deemed essential for the accomplishment of such purpose, and it is only authorized to raise funds for the specific object for which it is formed, and can do that in no other mode than by special assessments upon the property benefited, which can in no case exceed the benefits to the lands assessed. No funds or means are furnished such district with which to pay damages occasioned to individuals by the tortious or unauthorized acts of the drainage commissioners, and there is no express statutory requirement that it shall be liable for such torts. The duty, then, which was incumbent upon appellee to protect the lands of appellant through which its ditches passed, from inundation, was a duty of imperfect obligation, and one for the breach of which no action for damages lies against the district. The act under which appellee is organized is a general law, and applicable alike to all parts of the State, and under its provisions drainage districts may everywhere be formed. Appellee is to be regarded as a mere public, involuntary

*quasi* corporation, and the well established and uniform doctrine is that there is no corporate liability to respond in damages to an individual injured by the negligent or wrongful act of its officers, agents or servants."

In the case of the West Park Commissioners, as in the case of the Drainage Commissioners, considered in 135 Ill., no funds or means are furnished the West Park Commissioners with which to pay damages occasioned to individuals by the negligent acts of such commissioners, and there is no express statutory requirement that the municipality shall be liable for such torts. True, the commissioners have authority to raise certain sums of money by taxation, but such money is a trust fund required to be expended in the government, maintenance and improvement of the parks, boulevards and pleasureways, which parks, etc., exist, not for the benefit of the inhabitants of the municipality alone, but for the recreation, health and benefit of the public, and are " free to all persons forever."

The doctrine of *respondeat superior* is founded upon the maxim *Qui facit per alium, facit per se.*

In the present case it is the State, which, through commissioners appointed by the governor, responsible to and removable by him and no one else, is doing the work of creating and maintaining parks, boulevards and pleasure grounds. The municipality pays the expense of the work thus done, but it has no directive voice, either as to what shall be done or who shall be employed to do it. However inattentive or remiss the commissioners may be, however negligent, so that damage or injury from their acts results to individuals, the municipality is without remedy; it can only appeal to the sovereign power by whom the commissioners are appointed, and such sovereign will do as to it seems best.

For this and other reasons, we do not think this action can be maintained against the West Chicago Park Commissioners, sued as the Board of West Park Commissioners.

The judgment of the Circuit Court is therefore affirmed.